UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUNIUS LANCASTER,

    Plaintiff,

        v.

BEVERLY A. FOX, JR., *et al.*,

    Defendants.

Civil Action No. 14-1051 (JEB)

## MEMORANDUM OPINION

This is the kind of case that no prospective homeowner wants to read about. Its tortured narrative of quitclaim deeds, foreclosure-rescue schemes, and forged instruments just goes to prove the old adage: you should look – and when it comes to real estate, look closely – before you leap. The story revolves around Plaintiff Junius Lancaster, who in 2006 bought a house in the District under dubious circumstances. Eight years later, Lancaster filed this action against fourteen Defendants, seeking to quiet title to the property. Defendants, invoking this Court's diversity jurisdiction, then removed the case. Four Defendants – HSBC Bank, USA; Mortgage Electronic Registration Systems, Inc. (MERS); Ocwen Loan Servicing, LLC; and Litton Loan Servicing, LP – now move to dismiss. Because the Court finds that Plaintiff has failed to state a claim against Litton and Ocwen, it will grant the Motion as to these Defendants but deny it as to the other two.

**I.    Background**

According to the Complaint – which at this juncture the Court must credit – Lancaster was involved in a foreclosure-rescue scheme in 2006 related to property located at 1125 Allison Street Northwest. See Compl., ¶¶ 2, 15-19. Then-owner Lillie Fox entered into an arrangement

1

with Plaintiff, who believed he was serving as an "investor" who volunteered his "good credit" to aid Fox in avoiding foreclosure. Id., ¶ 18. In fact, the Metropolitan Money Store, the entity that structured the agreement, arranged for Fox to deed the property to Lancaster. See id., ¶¶ 16-18. Through this transaction, Plaintiff received the title deed and assumed two deeds of trust – the first for $288,000 and the second for $72,000 – which were recorded by Freemont Investment and Loan, Inc. See id.

The mortgages went into default almost immediately. Id., ¶ 21. The problem, according to Lancaster, was that he did not fully understand that he had purchased the property through these transactions, nor was he aware of his assumption of the two deeds of trust, because his name was signed on them without his knowledge or consent. Id., ¶¶ 18, 20. Lancaster was first alerted to his indebtedness when he began to receive collection calls. Id., ¶ 22. Metropolitan assured him, however, that payments would be made on the loan. Id. They never were. Id., ¶ 23. The first deed of trust, totaling $288,000, was then assigned to HSBC in September 2009. See Mot., Exh. B (Assignment Deed).[1]

In August 2007, meanwhile, the District of Columbia brought suit against Metropolitan for its role in the scheme, naming, among others, Lancaster and HSBC as "Relief-Defendants." See Metropolitan Complaint, ¶¶ 19, 39. According to the District's complaint, Metropolitan had targeted financially distressed homeowners like Lillie Fox and represented to them that it would

---

[1] Defendants attach four documents to their Motion: (1) what they refer to as the first deed of trust, which is, in fact, the second, see Exh. A (Second Deed); (2) an assignment deed of trust that transfers interest in the first deed of trust from MERS to HSBC, see Exh. B; (3) a complaint filed by the District of Columbia against Metropolitan and other defendants related to the foreclosure-relief scheme in 2007, see Exh. C (Metropolitan Complaint); and (4) a contract for deed executed between Lancaster and Beverly Fox (Lillie Fox's heir). See Exh. D (Contract for Deed). The first, second, and fourth were recorded in the Official Records of the District and are therefore public records. The third is a publicly filed court document. The first, third, and fourth are referenced in Lancaster's Complaint as well. The Court may, therefore, take judicial notice of these documents without converting Defendants' Motion to Dismiss into one for summary judgment. See Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007) ("In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.") (quoting Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006)).

2

temporarily put their homes in the names of third parties, pay the mortgages for them, and afterward return title to the homeowners. Id., ¶¶ 41-43. These were lies. Id., ¶ 46. In fact, the whole thing was a scam concocted to strip the properties of equity. Id.

Around the same time, Fox filed a quiet-title action against Lancaster, alleging that he had acquired title to the property through fraud. See Compl., ¶ 24. In response, Plaintiff claimed, as he does here, that his signature on the deeds of trust, but not the title deed, were forgeries. Id., ¶ 25. Fox subsequently passed away in May 2009. Id., ¶ 27. Her son, Beverly Fox, became the personal representative of her estate and inherited the quiet-title action in the process. Id. In April 2010, Fox's action was dismissed on Motion of HSBC when he failed to comply with court orders. Id., ¶ 28.

In May 2010, Plaintiff filed his own suit – an eviction action against Beverly Fox – and in October 2010, Lancaster and Fox entered into a contract through which Plaintiff would sell the property to Fox. Id., ¶ 31. According to the terms of the contract, Plaintiff would deliver a quitclaim deed to Fox upon total payment of the purchase price. See Contract for Deed, ¶ 10. The contract also contained some curious terms. For example:

> Both parties agree not to contact Freemont, Litton, its successors or assigns or Chicago Title Insurance or any other holder of the mortgage allegedly taken on the property by which it was conveyed to Junius Lancaster. Parties anticipate a quiet title action or adverse possession case being required by buyer (at Purchaser's expense) in the future to quiet title or secure valid title as against third parties. Any action by those third parties is not a default by either party to this contract.

Id., ¶ 25. The parties also agreed that "[n]either party shall contact the former mortgage holder or any entity or insurer taking from them, or investigator, agent or employee or counsel, without first getting advance written permission of the other party." Id. Fox ultimately breached the contract when he failed to render payments to Lancaster. See Compl., ¶ 31.

3

Although he is currently in possession of the property, it appears from the Complaint that Plaintiff has not paid taxes on it since 2010. Id., ¶¶ 32-33. In 2013, the District declared the property vacant, and Lancaster cannot afford to cure the deficiencies. Id., ¶ 34. Since then, significant unpaid taxes have accrued on the property. Id., ¶ 35.

When an owner of real property in the District falls behind on property taxes, the city may sell the property at public auction. See D.C. Code § 47–1342. In July 2013, the District held such an auction and sold a tax certificate for the property to Defendant Caz Creek DC, LLC, for $10,165.36. See Compl., ¶¶ 34-37. Per D.C. law, if a delinquent property owner like Plaintiff has not redeemed the property – by paying statutorily prescribed amounts – within six months of the sale, the tax-sale purchaser may file an action seeking to foreclose the right of redemption. See D.C. Code §§ 47–1361(a)(1), 47–1370(a). In March 2014, Caz Creek did just that in an action before the Superior Court. See Compl., ¶ 38 (citing Caz Creek DC, LLC v. Lancaster, et al., 2014 CA 001739 L(RP)).

On May 29, 2014, Plaintiff brought this separate action in Superior Court to quiet title to the property, naming fourteen Defendants he believes have an interest in the property, as well as "[a]ll unknown owners of the property." On June 23, 2014, several Defendants removed the action to this Court, invoking its diversity jurisdiction, see ECF No. 1, and on October 15, the Court denied Plaintiff's Motion for Remand. See ECF No. 32.

Several Defendants have since filed motions to dismiss. Real Time Resolutions, Inc. – a party Plaintiff names as Defendant but never mentions in the Complaint – moved to dismiss on July 21, 2014. See ECF No. 20. HSBC and Nomura Home Equity Loan, Inc. – a loan servicer with "an alleged interest" in the property, see Compl., ¶ 12 – followed suit on August 12. See

4

ECF No. 27.  Because Plaintiff failed to respond to these motions, the Court granted them as conceded as to Real Time Resolutions and Nomura.  See Minute Order of October 10, 2014.

The Court, however, did not dismiss the action against HSBC because it was included in the current pending Motion, and Plaintiff has responded to this one.  See ECF Nos. 6, 26.  This Motion is brought by three other Defendants as well: MERS, a nominee beneficiary for Freemont; Ocwen, a loan servicer for one of the deeds of trust; and Litton, a Defendant named but never mentioned in the Complaint.  See ECF No. 6.  The Court may now turn to the merits.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a claim for relief when the complaint "fail[s] to state a claim upon which relief can be granted."  In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation omitted).  A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above

the speculative level." Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III.    Analysis**

Defendants advance three arguments for dismissal: (1) several of them have no interest in the property; (2) the statute of limitations bars Lancaster's claims; and (3) Plaintiff's suit fails as a matter of law. Because the Court finds merit in the first argument but not the latter two, it will grant in part and deny in part Defendants' Motion.

A. Disinterested Parties

Defendants first maintain that the Complaint should be dismissed as to Ocwen, Litton, and MERS because these Defendants have no ownership interest in the property. See Mot. at 12. Litton is never even mentioned in the body of the Complaint; according to Defendants, this is because it possesses no claim to the property. Id. at 13. As to Ocwen, the Complaint merely asserts that, "upon information and belief," it "is a loan servicer for the Second Deed of Trust," but fails to identify any ownership interest it may have in the property or allege any wrongdoing on its part. See Compl., ¶ 13.

Lancaster does not directly deny the disinterested nature of these two Defendants. He claims instead that they "have knowledge of the facts and circumstances of the current state of title" and that "discovery" will aid him in "discern[ing] . . . Defendants' interests or their actions." See Opp. at 6. Even if true, however, this does not save Plaintiff's claims against these Defendants. Lancaster can learn more about the "current state of title" through third-party discovery. He cannot, however, justify his claim against these Defendants on the theory that, if allowed to proceed, he might discover some interest they have. Because Plaintiff fails to plead any ownership interest on the part of these parties and because he makes no substantive

6

allegations against them, the Court will dismiss the Complaint without prejudice as to Ocwen and Litton.

As to MERS, Defendants claim that although it was a nominee beneficiary for Freemont – the entity that recorded the disputed deeds of trust – it ultimately assigned any interest in the property to HSBC in 2009. See Mot. at 13. Defendants attach to their Motion an assignment deed they claim demonstrates as much. See Assignment Deed. The problem is that this instrument does not account for the entire sum of money secured by both disputed deeds of trust. Rather, it appears to assign to HSBC the MERS interest secured by only the first of them. See id. at 1 (identifying the first deed of trust and assignment amount of $288,000). MERS, however, was also the named beneficiary on the second deed. See Second Deed at 2 (deed for $72,000 with MERS as beneficiary). As the pleadings and appended documents appear to show that MERS retains some ownership interest in one deed, it remains a proper party.

HSBC, similarly, seems to have an interest in the property – namely, in the larger deed of trust. Because Plaintiff has sufficiently alleged that MERS and HSBC retain interests in the property, the Court will not dismiss his action against these Defendants.

B. Statute of Limitations

Defendants next assert that Lancaster's suit is barred by the applicable statute of limitations. See Mot. at 10. None of Plaintiff's "causes of action" – quiet title, declaratory judgment, statute of limitations, failure to mitigate, or unclean hands – has a specified limitations period under D.C. law, Defendants argue, and therefore the catchall limitation of three years applies. See D.C. Code § 12-301(8) (three-year limitations period on actions "for which a limitation is not otherwise specially prescribed"). Because Plaintiff's claim accrued in 2007 – when he first became aware of the alleged fraud – Defendants contend that it is now barred.

7

Lancaster, on the other hand, suggests that one of two longer periods applies: either the fifteen-year limitations period specified "for the recovery of lands, tenements, or hereditaments" or the twelve-year period applicable to actions on an "instrument under seal." See id. §§ 12-301(1), (6).

In arguing against these longer periods, Defendants analogize this case to Hancock v. Homeq Servicing Corp., No 05-0307, 2007 WL 1238746 (D.D.C. Apr. 27, 2007), aff'd, 526 F.3d 785 (D.C. Cir. 2008). In Hancock, the plaintiffs sought to rescind a mortgage that was the result of an alleged forgery. See id. at *1. Although they ultimately conceded that D.C.'s catchall statute of limitations governed their fraud claims, they had originally invited the court to apply the longer periods urged here by Lancaster. Id. at *4 n.4. The court concluded, however, that "[n]either provision applie[d] to [the] plaintiffs' claims." Id. They did "not seek enforcement of rights created by contract" – rendering the sealed-instrument period inapplicable – and the fact that "the underlying contract happen[ed] to be a mortgage [did] not make the 'purpose' of the action 'the recovery of lands.'" Id. (quoting D.C. Code § 12-301(1)). That section, the court concluded, "serves to establish the period of 'actual, exclusive, continuous, open and notorious possession' required to obtain a valid title to land in the District of Columbia." Id. (quoting Johnson v. Chase Manhattan Mortgage Corp., No. 04-344, 2006 WL 2506598, at *3 (D.D.C. Aug. 28, 2006)). Defendants argue that the same result should obtain here.

Although the Court finds this analysis informative, it cannot at this juncture determine for certain that the shorter limitations period applies. Lancaster sues to quiet title, an action that, at least in part, seeks "the recovery of lands." Were he successful in voiding the deeds of trust, he would thereby recover rights to the underlying property. There is evidence, moreover, that at least some of the deeds that form the basis of this suit are instruments under seal. Defendants

8

attach one of the disputed deeds of trust to their Motion, and it includes the word "(Seal)" after Lancaster's signature. See Second Deed at 14. Under D.C. law, "[w]hen [an] instrument is made by an individual, the word 'seal' next to the signature is 'standing alone, sufficient to create a sealed instrument entitled to the twelve-year statute of limitations.'" Murray v. Wells Fargo Home Mortgage, 953 A.2d 308, 318 (D.C. 2008) (quoting Burgess v. Square 3324 Hampshire Gardens Apartments, Inc., 691 A.2d 1153, 1156-57 (D.C. 1997)). Of course, Lancaster disputes the validity of his signature in this very document, undermining his resort to a statute of limitations related to its formation. It is not clear, however, whether the other deeds at issue are also under seal – for instance, the deed conveying title to Lancaster – and it is thus too early to rule out a longer limitations period. Because the statute of limitations could run as long as fifteen years, the Court believes it premature to dismiss Lancaster's suit on this ground.

   C.  Failure to State a Claim

Finally, Defendants contend that the Complaint cannot overcome three additional obstacles: (1) Plaintiff fails to plead superior title to the property; (2) his suit is barred by laches; and (3) he enters the Court with unclean hands. None of these arguments defeats Lancaster's action, however, at least not at this early stage.

First, Defendants argue that Plaintiff's suit should be dismissed because he has failed to plead superior title to the property. See Mot. at 16. Defendants are wrong. Lancaster's burden is to show "a title or right superior to that of the defendant as a prima facie case," which means he must "at least prove a title better than that of the defendant, which, if not overcome by the defendant, is sufficient." Jessup v. Progressive Funding, No. 13-0248, 2014 WL 1268809, at *7 (D.D.C. Mar. 28, 2014) (quoting 74 C.J.S. Quieting Title § 77 (2014)). Lancaster has satisfied this standard. Were he successful in proving his fraud allegations, he could thereby be "declared

9

free of any contractual obligations" to Defendants, and he could clear the title to the property of any cloud created by the contested deeds. See Compl., ¶ 51.

As to laches, that doctrine "comes into play when two prerequisites have been met: the defendant must have been prejudiced by plaintiff's delay, and plaintiff's delay must have been unreasonable." Martin v. Carter, 400 A.2d 326, 329 (D.C. 1979). Defendants emphasize Lancaster's delay in bringing this action, but their argument stumbles on the prejudice prong. According to Defendants, HSBC, as a bona fide purchaser of a loan secured by one of the contested deeds, was prejudiced by Plaintiff's failure to bring a suit alleging fraud when he first discovered it. See Mot. at 15. Lancaster, however, did claim the deeds were the result of forgery as early as 2007, and he did so in a quiet-title action to which HSBC was joined. This is not enough for Defendants, who complain that these were not "affirmative claims." See Rep. at 9. By "affirmative claims," Defendants presumably mean those that might arise in a quiet-title action initiated by Lancaster as opposed to defended by him. Defendants never explain, however, what prejudice Plaintiff might have mitigated had he initiated a separate lawsuit alleging the same forgery he did in Fox's quiet-title action. Based on the record before it, the Court finds that laches does not bar Lancaster's suit.

Defendants last claim that Plaintiff enters the Court with unclean hands. "The unclean hands defense closes the doors of a court of equity to a party tainted with inequitableness or bad faith relative to the matter in which she seeks relief and derives from the equitable maxim that one 'who comes into equity must come with clean hands.'" Ass'n of Am. Med. Colleges v. Princeton Review, Inc., 332 F. Supp. 2d 11, 17 n.2 (D.D.C. 2004) (citing U.S. v. Philip Morris, Inc., 300 F. Supp. 2d 61, 74 (D.D.C. 2004)). According to Defendants, Lancaster knew at the time of the original transactions that he was taking on neither the rights nor the obligations of a

real owner of the property and yet here he is seeking just that. See Mot. at 17. Plaintiff's "unclean hands are [further] demonstrated," they claim, "by the fact that he . . . seek[s] ownership of the Property free and clear of the mortgages taken as part of the scheme to pay off the prior mortgages taken by Ms. Fox." See Rep. at 11.

This is a rather steep hill for Defendants to climb on a Motion to Dismiss, where the Court defers to the Complaint as true. Absent further discovery or testimony, it is unclear exactly what Plaintiff's role was in the original transactions – whether prey or perpetrator of the underlying fraud. Lancaster admits that he never expected to purchase the property when he agreed to enter Metropolitan's arrangement, but this expectation does not in itself demonstrate wrongdoing. The fact of the matter is that Plaintiff was deeded the property, and loans were taken out in his name. To seek a declaration establishing his rights to the property now – after having his expectations thwarted by alleged fraud – is not an action that necessarily dirties his hands. At the same time, the Court acknowledges that Lancaster's claim here is rather ambitious – that is, a suit to give him unencumbered title to a house he never paid for.

In any event, because at this early stage neither the statute of limitations nor laches bars Lancaster's action and because Defendants have not shown that he enters the Court with unclean hands, the Court finds Plaintiff's claim survives this Motion as against HSBC and MERS.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss as to Ocwen and Litton, but deny it as to HSBC and MERS. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: November 5, 2014